216-0339 Anthony Halstine v. Pornel Anthony Halstine seeks reversal of the Commission's AP2 award as Mr. Halstine has stated in his statement that the Commission has established entitlement to a wage loss of $667.84 a week under Section 81. And the basis for our position is threefold. First, that the Commission adopted the work restrictions of Halstine's treating doctor, that he was incapacitated from his usual job as a union roofer. And second, that the Commission found Halstine's two part-time jobs constituted suitable employment, and consequently they reflected his earnings capacity. And third, to kind of, you know, blow on the fur as they say, Halstine never refused an offer of suitable employment that paid in excess of his current earnings capacity reflected by the wages from his two jobs. Now, in regard to the burden of proof, we maintain that when you look at the essential facts for this Court to consider, they're really susceptible of one inference. There really isn't a dispute. So consequently, we It's really a matter of law. And the salient facts that you need to consider essentially are in agreement. The parties agree that Halstine had a work injury on May 28th of 2010. We agree he was concurrently employed when he was hurt. It's agreed that he was a union roofer for Affordable for about a quarter of a century, for almost 25 years. We agree he sustained a femoral head fracture and a labral tear and it required surgery. It's agreed that he was terminated by Affordable. It was agreed he was not offered job placement and assistance or vocation training and that Dr. Dahm, the operative physician, imposed permanent restrictions that incapacity Yeah, but those are just the general facts. The de novo review is a rare occasion in counts, okay? Extremely rare. What about this? We've got, and this helps you, Wojcik offered a claim in a safety and monitor position which would have paid $40 an hour on at least three occasions. So that's in favor of the Respondent. But it says the position, it would appear from the record, would have required claimant to climb a ladder daily, stand all day, do other activities which are outside the work restrictions and be on the four to six standing recommendation provided by the second F.C.E. Whether or not that is true is not subject to a de novo review. That's an interpretation of facts, is it not? You know, I don't have a ruling in dispute on that. We've got the medical restrictions. They're understood. The demands of this safety and monitor position are relatively unknown other than the fact that you've got to be on your feet all day and you have to climb a ladder. But whether it is or is outside of the restrictions of the functional capacity evaluation is not a question of law, is it? Well, I think, here's one of the issues we have. So for the safety and monitor position, we don't have a job description, we don't have a medical provider or a vocounselor that would weigh in and say, this is a, the individual can perform the demands of this job. What we do have are certain limitations. And all we know about the safety and monitor job, perhaps, that you have to be on your feet. And if you have to be on your feet and walking around and it's an eight-hour workday, he can't do it. Right, well, that helps, that strengthens your position, doesn't it? It does, it does. But then you're saying that in that instance, there's only, it either is or isn't, it's one inference as to, the conclusion is, it is outside of the job restrictions. It is. Of the FC. And there's no other, if you look at hours standing, six versus eight-hour required ladder. That he just can't do it. Okay. Right. Right. But, you know, some of the other facts that are in agreement that, well, we had Dr. No found Mr. Holstein capable of full-duty work, and his opinions were embraced by the Commission. We're in agreement that T.T. was terminated, and it's agreed that he began working again at his second job, the Community Christ Church, making $14.50 an hour, working up to about 25 hours a week in May of 2012. And it's also agreed that he demanded job placement assistance in 2012 and it was never offered. It is agreed that he got a second job on his own in November of 2012, working for the Loving Arms Day Care Center, earning $12.50 an hour, up to 20 hours a week. And then the parties agreed that working these two jobs, roughly up to 45 hours a week, he could earn $5.75 an hour. And we also agreed that, had he not been injured, if no injury occurred, he would be making $15.70, $7.01 an hour. You know, on these facts, as the Court considers them, they're left with a conclusion that, in this case, while the Commission's math was correct, its result was wrong. It's pretty clear that, we look at the work. I mean, the Commission found that Holstein was incapacitated from his usual job as a union worker. They adopted the employability assessments of Dr. Dahm, based in part, not only his exams, but the FCE. And it also made an express finding that Holstein, through his job search, secured positions that constituted suitable employment. And I just wanted to... Suitable employment for the condition he's in. I'm sorry, I didn't... Suitable employment for the condition he's in. Yes. Okay. I just wanted to read, showing my age here. So you're saying the essential elements of the wage differential are established by the Commission? They found them. Yeah. If I could read real briefly. The petitioner returned work within the restrictions placed upon him by his treating doctor. Those restrictions take into account the level of activity that the petitioner can safely perform, and perform without pain on a repetitive basis. Dr. Dahm testified his restrictions will help him defray further aggravation of his hip condition and an eventual replacement. The restriction made a return to work as a roofer impossible. The petitioner, without the benefit of assistance he requested from his finding, made a diligent search for work within his restrictions. His doctors permitted the return to work at his position as a janitor for a campground, so he looked for and located a similar position at a daycare facility. The Commission decision was not to say, in doing so, he has put together two part-time jobs, both which fall within the permanent restrictions, into a full 40-hour-plus work week. The arbitrator of the Commission expressly finds that between these two jobs, the petitioner has proven he achieved or secured suitable employment as contemplated by Section 81. But he didn't because none of those jobs were within his work restrictions. That has to be irregular, right? Those two jobs that he found are within his restrictions. The church jobs. Just the 40-hour jobs that were not within his work restrictions. Right, so, and then it's the last sentence where, you know, I'm happy with the work, but it's the result that I throw a flag at. And the Commission decision says he declined three job offers for jobs in the 40-hour wage that appear to be within the physical restrictions imposed by Dr. Dahn. But the record refutes that, doesn't it? It does. Well, from my perception, it does. I mean, you look at, you ask Mr. Holstein, who, you know, Wojcik's his friend. He's trying to help out a buddy who's, you know, scrambling, working 40, 45 hours a week, you know, making $12.50 to $14.50 an hour. So I'll throw him a bone and I'll approach him about this safety monitor job. And it's an account that Wojcik just got. It's in Chicago. And he offers it to him three times. And Holstein declines it because of his restrictions and his right hip pain. And when they asked Wojcik about the job, he says, no, it requires climbing ladders and you've got to be on your feet all day. And Wojcik said, when I had repeatedly offered it to him, he said he couldn't do it because he was concerned about being on his feet so much. And that essentially corroborates what Holstein testified to about these job offers. And there were some other job offers that Holstein declined. One was for a side job and the other was a roofing job. They paid $40 an hour. So it's one of those, I can't do these jobs because of my restrictions and the pain in my right hip. And in terms of Dr. Dohm's restrictions, the two that you're focusing on are the limitation of four to six hours per day of standing and then the only occasional ladder use. Is that right? And the lifting. And the lifting. Well, what about the safety monitor position entailed lifting? It did not involve any lifting. So it's just the no prolonged standing and very occasional ladder use that factors into the safety monitor position and whether or not that was possible. Yes, and I think there's something else to be pointed out about this. From my perspective, the safety monitoring job is not really a bona fide job offer. We don't know the start date. We don't know the duration of the job. We don't know a lot about it. I think back in my contract class, it's almost illusory. I think it's a buddy trying to help out a friend. So how long does the job run? Does it run two weeks? There's a work stoppage? There's a strike? Who knows? We can't conclude whether it's legitimate or not. Is that our province to do that? Well, I think there has to be evidence that it is. There has to be some evidence that it's a bona fide job offer. Or really the term could be, is it suitable? And I found, as best I could, a definition for suitable in the AMTC cases. Is it within the level of employment that can be performed by a person in Holstein's or injured workers circumstances? And in this case, given the medical evidence, it's not. And I think you have to look at it from the reasonable man perspective. If Holstein could do this job, is it logical for him to turn down a job making $40 an hour, when he's going to work two part-time jobs. One is 20 hours a week, one is 25 hours a week. And his best day with those two part-time jobs, he's only going to make a third of what he would normally make if he could earn what he would be earning if he was a union broker. It just doesn't make any sense. It almost makes him an economic masochist to want to refute that. And there's no suggestion... An economic masochist, according to your phrase. Well, he was... Did he write that one down? I thought about it on the way over. I was concerned about saying it. There's no suggestion in the record that he lacks credibility, for the most part. This guy's got true grit. Is your conclusion this summer, Isaac, that if you're representing Mr. Holstein, you've got the perfect wage differential case? Well, I mean, I would like to say that, yeah. You'd like to be humble, but you don't want to say that because you're humble. I think the facts line up well. You know, in looking at the... You know, I understand that the focus on the... It's the capacity to earn. I went back and looked at the grow and coal case. You know, we put that... It says right in there. That phrase was put in there, so we don't reward the loafer. That was the term. You know, we don't want to reward the loafer. And I get that, but, you know, a guy working 45 hours a week, you know, he's doing... He found these jobs on his own. That's not the definition of a loafer. And as I went back and looked at your recent pronouncement about the earning capacity, I think they talk about, you know... I'm sorry, real quick. In terms of, I'm sorry, super employment, look at Holstein's training. I mean, this guy, he's 24 years as a roofer. And then he's... You know, that's essentially his work life. That takes him 21 to 45. He's in the early 50s now. And then he's done some general maintenance. So, you know, his training is limited. His experience, it's all heavy manual labor work. And then the last thing they talk about for super employment is business acumen. And all due respect to my friend, he really doesn't have it. He's a union guy, which is a good thing. And then he's a general maintenance employee. It's not as though he's going to go out there and have this business acumen that he's going to make substantially more money. And then in terms of the... You know, real quick on the case law. You know, wage losses are preferred over scheduled awards. I covered that in my brief. You know, if a wage loss is elected, approved or awarded. The earnings capacity I want to address here. The actual earnings can't serve as the factor to consider for earnings capacity. But I know that the analysis is, did the employee make an honest effort to secure employment? That is, did he do a bona fide job search? Or, you know, similarly stated, is he loafing? And here, he did. I mean, the guy went out and knocked down two jobs on his own after his request for job placement was declined. And then I know, if we get into the economic analysis, could the injured worker sell his services in a competitive labor market? And if so, how much could he earn? And this is to discount the payments of the sympathy. And I would submit to you, Mr. Holstein did not get an offer of gainful employment at $40 an hour through some arms-length negotiation, where he went and sat through an interview and they said, boy, we really love your skill set. And with these work restrictions, it's $40 an hour a year, it's $8 a day. It's five days a week and you start on Tuesday. We don't have that here. We have a friend trying to help somebody out. And I think when you look at this earnings capacity, think about this. Holstein was terminated as a foreman when he couldn't accommodate his restrictions. The demand for job placement was declined, so he went out and found these jobs on his own. So, and I think also, he's been working these two jobs for some 10 months before he has this conversation with Wojcik. It's kind of an absence choice. So you drop these two jobs when you're making $5.75 a week and you take a flyer on this other job. That's pretty tough on this guy. What happens if it ramps up in a day? Who knows? But he's really in a difficult position to expect that he's going to further jeopardize his current future. And then last, and I'm not a fan of always embracing the, you know, fulfilling the purpose of the act, but, you know, reversing the commission's decision on permanency does fulfill the purpose of the act, and that is to compensate the injured worker for economic disabilities that diminish his value in the labor market. And we're going to construe it liberally to ensure that casualties of industry are not borne by the individuals. When you look at here, we've got a union roofer for 25 years. It's a hip fracture, permanent restrictions. He's terminated. He's requested job placement assistance. It's ignored. He hits the pavement. He finds two decent-paying jobs. Regrettably, they pay a third of what he earned in full performance of his job as a roofer. And right now, with this commission's decision, he's bearing the cost of this injury. It's not being borne by the employer at all. I cited the Gali Netty case, which I believe supports our position that this decision should be reversed. I referenced the Prince case in my brief, and, you know, that's an interesting case factually. So it's a German electrician. He does field work, and then he's also a supervisor, and he suffers a work injury, and that work injury precludes him from doing the field work. He could do some supervisory work. And the wage loss award was affirmed, and they said, well, look, if the supervisory work isn't there, then he's back in line with all the other general electricians. He can't do that work, so he's incapacitated from his usual line of employment. Your time is up. You'll have time in reply. Very quickly. I'm sorry. Thank you. Thank you. Counsel, your honors. Counsel, Daniel Sardar on behalf of Affordable Roofing. We hear you have a factual issue. What are essentially what it comes to? Can I make a suggestion? Did you do your brief, your Affordable Roofing? You did the brief, right? Yes, your honor. I don't see your name on it. I don't. Am I missing? Maybe my eyes are moving. I'm on the very last page. Yeah, I guess. One of my colleagues here has food. You should. It should have been on there. I apologize for the priority of my brief on this matter, your honor. All right. Turn to the issues at hand. The case revolves on a factual question. Whether or not there was these job offers made within this $40 an hour range, which shows that there's no loss of earning capacity in this matter. Well, at this point, it's true that the commission decision has found that there was a loss of disability in return to his usual and customary line of employment. For purposes of this appeal, that's no longer an issue. It had been an issue in prior stages of this litigation, mainly with the commission. But to get that overturned, it would be a manifest wage standard. Similarly, with the second prong of the analysis, it's a manifest wage standard. It's a factual issue that the commission resolved in respondent's favor. They took several what I consider raw facts that were testified to at trial, most notably being this job offer was made to Petitioner by his friend. Counsels made an issue of whether or not the terms of this job and what was and wasn't discussed. Obviously, Petitioner would be in a better position to know the length of this job, the duration of it, and how long it could have lasted. If there was more evidence to that effect, it would be in his possession. It could have come out in the record. From what did come out in the record, it showed to be within his restrictions, namely being that he did not have to do any heavy lifting. He didn't have to do any squatting or stooping. He had to do occasional ladder work, which is what Dr. Dohm said he was capable of doing. What is occasional ladder work? From what I can gather, it would be climbing up a ladder a few times a day, which I think would be a fair definition of occasional ladder work. For this job, he would have to go up the ladder and essentially stand there, probably climb down for lunch, climb back up after lunch, and then stand for the remainder of the day. All right. So basically, is it fair to say that essentially he has to stand all day, correct? Correct. Okay. And the recommendations by the second FCE was four to six hours standing. The Pineville said that was never adopted as his restrictions. Dr. Dohm did not adopt any sort of limitations for how long he could stand. What were Dr. Dohm's restrictions? Dr. Dohm's restrictions were a 40-pound lifting restriction with occasional bending, squatting, or kneeling, and only very occasional ladder work. He never put a restriction in saying how long he could or could not stand. Dr. Dohm altered the restrictions from the FCE based upon his own evaluation of Mr. Holstein. Well, the position would have required him to climb a ladder daily. That's not in dispute, right? That is not in dispute, no. Didn't Dr. Dohm incorporate the FCE into his restrictions? I don't believe he did. Did she explain that he restricted climbing to a work level lower than what the FCE recommended? And he recommended various other restrictions that the FCE did not even give. He altered it to a point where I don't think the FCE—I think he considered the FCE when giving his restrictions, but then changed it to what his own belief was. I think that's what's borne out of the record. I think that's what the commission found. These are factual issues that the commission is free to make these determinations. There's ample support in the record for these findings. It's not an issue of there's no evidence. There certainly is evidence, which, with this case being a factual question now, that's all that needs to be shown. It's a manifest weight of the evidence. Well, it has to—I mean, yeah, there has to be evidence, but then the question is whether the opposite conclusion, given that evidence, is clearly apparent, right? Which it's not. I think it's— That's your position. Well, it certainly is my position, and I'm going to posit that it should be your Honor's position, that there's evidence there. It's not irrational or unreasonable. Maybe two people looking at this could draw a different conclusion. That's not manifest weight. The conclusion is to be unreasonable. This safety inspector offer that he had, was that on ropes? Yes, it would have been. Would that—how can that be a very occasional ladder work? Because it doesn't require him to be going up and down the ladder throughout the course of the day. How often would he be able to do it? I mean, how often would he have to do it? I don't know that that's entirely clear from the record, which I will admit there are some certain gaps with this job, but I think it shows that it's not as if he's going to be on a ladder all day long, which is what Dr. Dohm was advising against. Every time he goes out to inspect a roof, he's got to be on a ladder, doesn't he? Yes, but it's also shown that he can still be going up and down ladders. There was evidence of him going up and down a ladder to fix wiring in a skylight. There's evidence that he went out to frame a house. He was also able to do work that exceeds what he was doing as a maintenance man or in the janitorial job when he went and tore out a basement and made nearly $1,000 doing that for, I believe, a day's work. There was evidence that he framed a skylight and received $320 an hour for eight hours of work. Once again, that's another job he's able to do, earning $40 an hour. He's able to earn more than what he was in these two jobs. They were probably easier, less intense labor jobs that fall well below what his restrictions are, whereas there's other jobs that maybe are kind of getting closer to his restrictions but still within them that he's capable of doing. I'm sorry. I didn't mean to interrupt you. Yeah. Dr. Gohm gave an evidence deposition. That was in August of – excuse me, March of 2013. And at the time of his evidence deposition, didn't he indicate one of his work restrictions for claimant was no climbing ladders? I'm talking about only occasional climbing of ladders. At that time he said no climbing ladders. I don't believe those restrictions were eventually then adopted by the – I'm sorry. I don't believe those restrictions were the ones adopted by the commission as to what Mr. Holstein's work restrictions were. Well, where does the commission decision identify which – The commission decision is only – the commission decision never discussed what restrictions were discussed at the evidence deposition. They solely discussed the restrictions from the February 28, 2012 office visit note. So you're saying what's implicit in the commission's decision is that it discounted Dr. Gohm's work restriction of no climbing ladders as he expressed in his March 12, 2013 evidence deposition? I would assert that it is implicit in the fact that they had that evidence before them, chose not to discuss it, chose not to utilize it in assigning the work restrictions. Yeah, but is it up to them? I mean, if a doctor testifies and set these work restrictions, how does the commission say that they don't apply? Because I think there was contrary evidence to show that maybe his restrictions could have been greater than what he said. There was opinions of Dr. No in this case. There was multiple different facets where the commission ends up having to do a difficult job of finding and sorting through various different medical opinions to assign what a petitioner can and cannot do. I mean, just at best, it seems that the commission's decision is in error where it says the arbitrator concludes the petitioner has returned to work within the restrictions placed upon him by his treating physician. Excuse me. Yes. Not that line. This one. The arbitrator further notes that the petitioner declined three job offers in the $40 an hour range that appeared to be within the physical restrictions imposed by Dr. Gohm. Since one of Dr. Gohm's restrictions was no climbing ladders, that statement would seem to be in error. I don't know that those were restrictions because then you have to get to the issue of his current jobs would not be suitable employment because he was still required to occasionally climb ladders at those jobs. The ladder work then was to change light bulbs in various signs. It still required ladder work. If you're saying there's no ladder work, was there restriction? That's what Gohm said. No climbing ladders. Period. No climbing ladders. But those were not the restrictions. I don't believe those were the restrictions that were eventually adopted by the commission. You say adopted by the commission. The commission doesn't adopt medical restrictions. You might want to say the commission didn't recognize those, but it didn't adopt them. Then I apologize. They did not recognize those as his restrictions. They recognized them to be from Dr. Gohm's restrictions from the February 2012 note. So for that reason, they found that those were within it, and I think it's certainly reasonable for them to find that way, whether or not there was three or one job offer. If there's a single job offer and it was found to be a bona fide job offer, then I think that is enough to show that he was capable of earning as much as he was as a roofer, so he did not prove his entitlement to it. The medical aid was late in the morning, but what about your opposing counsel's argument that there's nothing to flesh out this job? How do we know it was a bona fide? There was no beginning, end, terms, hours of information? From all indications, I would know that this was a permanent job. If it was a temporary job, I think there would be more in the record to show that I was going to offer him a job for the week or a day. The indication and the reasonable inference to draw from what was testified to is that this is a permanent job. I think most jobs are considered permanent, unless it specifically says there's a time limit on this job, where you're only going to be doing this for a month. If I'm going to be offering someone a job, the idea is I'm going to be offering that job in perpetuity until the job, until the work no longer exists. Because there were no time limits put on it by the prospective employer. That's correct. I think that's a reasonable inference that it continues to last that long. So for that, I believe that the petitioner failed to meet his burden of proof at trial, and I'd ask that you just uphold the commission's decision. Thank you, counsel. Counsel, you may reply. Counsel, court, Dr. Dahm did note the FCE findings, and he refined them as it related to lifting and whatnot. But he noted that the standing was limited to five to six hours with regular breaks, walking five to six hours with regular breaks. Dr. Dahm was asked about his work restrictions during the course of the deposition, and when asked, I'm sorry, so it says, so that in fact the restrictions that he placed on him on August 12, 2012, 50-pound lifting, and also it says no climbing ladders. As you sit here today in March of 2013, do you have any, have you seen anything that caused you to change that recommendation? He says no. He said no climbing ladders, period, right? Right. And then in the commission's decision, Dr. Dahm testified when he last evaluated the petition on August 9, 2012, the work restrictions were increased to 50-pound lifting restrictions and recommended no climbing ladders, and the petitioner should continue to work at the medium level permanently. So, and then in terms of the, you know, this is one of those where you don't answer the doorbell from your friend. He says, I'm Wojcik. Wojcik talks about that. Wojcik's been in business for a short period of time. He also talks about a criminal job law grant. I don't even think I have that. I've been at the same place for 31 years. And they, he just asks him about the job, I'm sorry. He said it was the beginning of September, I thought I'd go on three occasions. I picked this, I picked up this job. I was looking for some guys to help me out. He said he couldn't do it. He had to stand around and update me on the crime matters. That's all we really know about the job. There aren't any, you know, there isn't a filler. It's the illusory terms, if you will. So from that perspective, we don't see it as a bona fide job offer. And, again, we look for a modification of the commission's plenancy award to reflect an 81 for the numbers reflected in our group. Thank you. Okay. Well, thank you, counsel, both, for your arguments in this matter this morning. We'll be taking your advisement with this position shall issue.